**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| DAVID IZSAK, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 14-cv-7952 |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| DRAFTKINGS, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff David Izsak ("Plaintiff") brings this Class Action Complaint against Defendant Draftkings Inc. ("Draftkings"), on behalf of himself and all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## I.   NATURE OF THE ACTION

1.   Draftkings is a corporation that offers the opportunity to win cash prizes by competing in daily and weekly fantasy sports contests on the Internet and mobile devices, such as wireless telephones, in exchange for entry fees. In an effort to market its products and services, Draftkings sent (or directed to be sent on its behalf) unsolicited text messages to the wireless telephones of Plaintiff and each of the members of the Class without prior express

written consent[1] in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2.      Neither Plaintiff nor the other Class members ever consented in writing, authorized, desired or permitted Draftkings to send text messages to their wireless telephones.

3.      By sending such unauthorized text messages, Draftkings caused Plaintiff and each of the Class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text messages, and the monies paid to their wireless carriers for the receipt of such messages.

4.      In order to redress these injuries, Plaintiff seeks an injunction requiring Draftkings to cease all unsolicited text message activities, an award of statutory damages to the Class members under the TCPA, and an award for damages for conversion, together with costs and reasonable attorneys' fees.

## II.      JURISDICTION AND VENUE

5.      This Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States and further, under 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Draftkings, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

6.      This Court has personal jurisdiction over Draftkings under the Illinois long-arm statute, 735 ILCS 5/2-209, because Draftkings engaged in solicitation or service activities within the State of Illinois. This Court also has personal jurisdiction over Draftkings because a substantial a portion of the wrongdoing alleged in this Complaint took place in and/or was

---

[1] As of October 16, 2013, prior express **written** consent is required. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order (FCC Feb. 15, 2012) (amending 47 C.F.R. 64.1200(a)(2)).

directed toward this State. Draftkings, by sending mass text messages into this State soliciting business, has sufficient contacts in this State to render the exercise of jurisdiction by this Court permissible.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this District.

### III.      PARTIES

*Plaintiff*

8.      Plaintiff David Izsak is an individual domiciled in Cook County, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of the State of Illinois.

*Defendant*

9.      Defendant Draftkings is a corporation organized in and existing under the laws of the State of Delaware with its principal place of business located in Suffolk County, Massachusetts. For purposes of 28 U.S.C. § 1332, Draftkings is a citizen of the States of Delaware and Massachusetts.

### IV.      FACTUAL BACKGROUND

*Background on Unsolicited SMS Activity*

10.      In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

11.      One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text messages (usually no more than 160 characters) to and from wireless telephones.

12.     SMS messages are directed to a wireless device using the telephone number assigned to the device. When an SMS message is successfully made, the recipient's wireless phone rings, alerting him or her that a message is being received. As wireless telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

13.     According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—sent directly to user's cell phones."[2] In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."[3]

14.     Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

15.     Due to the growing concern over unwanted SMS message advertisements, the Federal Communications Commission ("FCC") updated its rules on consent.

16.     As of October 16, 2013, senders of SMS message advertisements for goods or services must obtain the recipient's prior express written consent.

***Draftkings' Unsolicited SMS Message Advertisement to Plaintiff***

17.     As part of its advertising campaign, Draftkings has sent and continues to send unsolicited text messages to Plaintiff's and the Class members' wireless phones without prior express written consent.

---

[2] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited November 28, 2012).
[3] *Id.*

18.     On September 1, 2014, Draftkings transmitted the following text message to Plaintiff's wireless phone:

> From djjg11@yahoo.com:
> Come play DraftKings with
> me. Use my link and we'll
> both get a bonus https://
> www.draftkings.com/r/
> GERONIMO11

A true and correct copy of the text message is attached as Exhibit A.

19.     The "from" field of such transmission was identified as "617-849-9834."

20.     Upon calling the phone number identified above, the following message is heard:

> Hi, this automated message from Draftkings. Please refer to the
> original message you received from this number.

21.     The website identified in the text message attached as Exhibit A is registered by Draftkings.

22.     Draftkings sent or transmitted, or had sent or transmitted on its behalf, the same (or substantially the same) text messages *en masse* to a list of thousands of wireless telephone numbers or randomly generated phone numbers.

23.     On information and belief, Draftkings sent these text messages to Plaintiff and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

24.     Plaintiff never consented to in writing, requested, or otherwise desired or permitted Draftkings to send or transmit text messages to his wireless phone.

## V.    CLASS ALLEGATIONS

25.    Plaintiff brings this action, as set forth below, on behalf of himself and as a class

action pursuant  to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil

Procedure on behalf of a class defined as:

> All individuals in the United States who received a non-
> emergency, unsolicited text message to their wireless telephones
> from Defendant Draftkings, Inc. through the use of an automatic
> dialing system, at any time within the four years prior to the filing
> of the instant Complaint (the "Class").

Excluded from the Class are Draftkings and its subsidiaries and affiliates; all persons who make

a timely election to be excluded from the Class; governmental entities; and the judge to whom

this case is assigned and any immediate family members thereof.

26.    Certification of Plaintiff's claims for class-wide treatment is appropriate because

Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as

would be used to prove those elements in individual actions alleging the same claims.

27.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the

Class are so numerous that individual joinder of all Class members is impracticable.   On

information and belief, there are thousands of consumers who have been damaged by Draftkings'

wrongful conduct as alleged herein.  The precise number of Class members and their addresses is

presently unknown to Plaintiff, but may be ascertained from Draftkings' books and records.

Class members may be notified of the pendency of this action by recognized, Court-approved

notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings,

and/or published notice.

28.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

      a.      whether Draftkings' conduct constitutes a violation of the TCPA;

      b.      whether the equipment Draftkings used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

      c.      whether Plaintiff and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, in what amount(s);

      d.      whether Plaintiff and the Class are entitled to treble damages based on the willfulness of Draftkings' conduct; and

      e.      whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

29.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claim is typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

30.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members he seeks to represent; he have retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously.  The interests of the Class members will be fairly and adequately protected by the Plaintiff and his counsel.

31.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**  Draftkings has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

32.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Draftkings, so it would be impracticable for Class members to individually seek redress for Draftkings' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### VI.     CLAIMS ALLEGED

### COUNT I
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of the Class)**

33.     Plaintiff incorporates by reference paragraphs 1-32 as if fully set forth herein.

34.     Draftkings and/or its agents sent unsolicited commercial text messages to the wireless telephone number of Plaintiff and the other Class members *en masse* without their prior express written consent.

35.     Draftkings sent the text messages, or had them sent on its behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

36.     Draftkings utilized equipment that sent the text messages to Plaintiff and other Class members simultaneously and without human intervention.

37.     By sending the unsolicited text messages to Plaintiff and the Class, Draftkings has violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Draftkings' unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the unsolicited text messages on their wireless phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

38.     Should the Court determine that Draftkings' conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

## COUNT II
### Conversion
### (On behalf of the Class)

39.     Plaintiff incorporates by reference paragraphs 1-32 as if fully set forth herein**.**

40.     By sending texts to Plaintiff's and the other Class members' wireless telephones, Draftkings converted to its own use data usage under Plaintiff's and the other Class members' wireless telephone plans and components of Plaintiff's and the other Class member's wireless telephones.

41.     This loss of use constitutes an asset of economic value paid for by Plaintiff and the other Class members when they acquired their wireless telephones and subscribed for wireless telephone service.

42.     Immediately prior to the sending of the texts, Plaintiff and the other Class members owned and had an unqualified right and immediate right to the possession of wireless

telephones and the data service under their wireless telephone plans used to receive Draftkings' texts.

43.     By sending texts (or directing texts to be sent on its behalf), Draftkings' appropriated to its own use the data usage and wireless telephones used to receive the texts in such a manner as to make them unusable or decrease their performance. Such appropriation was wrongful and without authorization.

44.     Draftkings knew or should have known that such appropriation of the data usage and phone components was wrongful and without authorization.

45.     Plaintiff and the other Class members were deprived of the data usage and performance of their wireless telephones, which could no longer be used for any other purpose.

46.     Accordingly, Plaintiffs and the other Class members suffered damages as a result of the receipt of the texts.

## VII.     JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII.     REQUEST FOR RELIEF

WHEREFORE, Plaintiff David Izsak, individually and on behalf of the Class, requests that the Court enter an Order as follows:

A.     Certifying the Class as defined above, appointing Plaintiff David Izsak as the representative of the Class, and appointing his counsel as Class Counsel;

B.     Awarding of actual and statutory damages;

C.     Requiring Defendant Draftkings, Inc. to cease all text message activities initiated without prior express written consent, and otherwise protecting the interests of the Class;

D.     Awarding of reasonable attorneys' fees and costs; and

E.     Awarding such other and further relief that the Court deems reasonable and just.


Dated: October 11, 2014                    Respectfully submitted,

                                           DAVID IZSAK, individually and on behalf
                                           of all others similarly situated

                                           By:   *s/ Joseph J. Siprut*
                                                 One of the Attorneys for Plaintiff
                                                 And the Proposed Putative Class

Joseph J. Siprut
*jsiprut@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT** PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.241.1260


4815-0176-2078, v. 1