IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DAVID IZSAK, individually and on behalf of all those similarly situated,** | Case No. 1:14-CV-07952 |
| **Plaintiff,** | |
| **v.** | Honorable Andrea R. Wood |
| **DRAFTKINGS, INC., a Delaware corporation,** | |
| **Defendant.** | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS
PLAINTIFF IZSAK'S CORRECTED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..........................................................................................................1

II. STATEMENT OF FACTS............................................................................................2

III. LEGAL STANDARD....................................................................................................3

IV. ARGUMENT.................................................................................................................4

      A.     Plaintiff Fails to Adequately Allege a Violation of the TCPA ...................................4

            1.     The TCPA Applies Only to "Autodialers" ........................................................4

            2.     The TCPA Only Applies to Messages Sent "Without Human Intervention" ......................................................................................................6

      B.     Plaintiff's Conversion Claim Is Barred by the *de minimis* Doctrine .........................9

V. CONCLUSION.............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Abbas v. Selling Source, LLC*,
   No. 09 CV 3413, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009) ................................. 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................... 4, 5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 4, 5

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009) ................................................................................... 5

*G.M. Sign, Inc. v. Stergo*,
   681 F. Supp. 2d 929 (N.D. Ill. 2009) ...................................................................... 9

*Garrett v. Rangle Dental Lab.*,
   No. 10-cv-1315, 2010 WL 3034709 (N.D. Ill. Aug. 3, 2010) .................................. 9

*Gragg v. Orange Cab Co.*,
   995 F. Supp. 2d 1189 (W.D. Wash. 2014) ............................................................... 8

*Griffith v. Consumer Portfolio Serv., Inc.*,
   838 F. Supp. 2d 723 (N.D. Ill. 2011) ...................................................................... 7

*In the Matter of Wade*,
   969 F.2d 241 (7th Cir. 1992) ................................................................................... 4

*Johansen v. Vivant, Inc.*,
   No. 12 C 7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) .................................. 6

*Knutson v. ReplyA, Inc.*,
   No. 10-CV-1267 BEN WMC, 2011 WL 291076 (S.D. Cal. Jan. 27, 2011) .............. 6

*Kramer v. Autobytel, Inc.*,
   759 F. Supp. 2d 1165 (N.D. Cal. 2010) ................................................................... 5

*Mims v. Arrow Fin. Servs., LLC*,
   132 S. Ct. 740 (2012) .............................................................................................. 9

*N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*,
   163 F.3d 449 (7th Cir. 1998) ............................................................................... 4, 6

## TABLE OF AUTHORITIES (Cont'd.)

**Page(s)**

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, No. 13-14013, 2014 WL 5471916
  (11th Cir. Oct. 30, 2014) ................................................................................................ 8

*Rossario's Fine Jewelry, Inc. v. Paddock Publications, Inc.*,
  443 F. Supp. 2d 976 (N.D. Ill. 2006) ............................................................................. 9

**Statutes**

42 U.S.C. § 227(a)(1) ........................................................................................................ 4

42 U.S.C. § 227(b)(1)(A) ................................................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 3

**Other Authority**

137 Cong. Rec. S9840-02 (daily ed. July 11, 1991) (statement of Sen. Hollings) ......................... 9

## I.  INTRODUCTION

Plaintiff David Izsak brings this lawsuit because one of his friends sent him a text message invitation to join a fantasy sports league run by DraftKings, Inc. ("DraftKings"). Plaintiff apparently was not interested in playing fantasy sports.  However, rather than simply ignoring his friend's text, Plaintiff filed this putative nationwide class action against DraftKings on the flawed theory that, because Plaintiff's friend sent the text message by using the DraftKings in-phone application rather than exiting the application and sending him the text message directly, DraftKings purportedly owes Plaintiff (and every other putative class member he seeks to represent) up to $1,500 in statutory damages for an alleged violation of the Telephone Consumer Protection Act ("TCPA").  This case represents only the latest chapter in a long and abusive history of TCPA litigation.[1]  This Court should dismiss this action with prejudice.

Plaintiff's effort to invoke the TCPA is an attempt to jam a round peg into a square hole. The TCPA prohibits unsolicited commercial text messages only if they are sent without human intervention, and sent by an automated telephone dialing system ("Autodialer") that has the

---

[1]  Courthouse News Service recorded that between March 2003 and June 2008, 1,744 new TCPA cases were filed, 28% of which demanded class certification and roughly one third of which were filed by a single attorney.  Yuri R. Linestsky, *Protection of 'Innocent Lawbreakers': Striking the Right Balance in the Private Enforcement of the Anti "Junk Fax" Provisions of the Telephone Consumer Protection Act*, 90 Neb. L. Rev. (2011).  In keeping with that trend, Plaintiff's lawyers here have adopted a copy-and-paste approach to TCPA litigation and have filed 25 TCPA cases in the past nine months alone.  (See Appendix A.) Indeed, Plaintiff's counsel's copy-and-paste approach came to the forefront when they filed the complaint in this case because they inadvertently identified the wrong court, the wrong state and even the wrong plaintiff in the case caption and civil cover sheet.  (Dkt. 1, 2.)

capacity to generate and dial random or sequential telephone numbers.[2]  Plaintiff not only fails to allege any facts demonstrating that an Autodialer was used, but the facts that he does allege demonstrate that the text was actually sent by a friend or acquaintance of Plaintiff, and certainly not sent randomly, automatically, or without any human interaction.  Plaintiff's own allegations (and the text message attached to the Complaint) confirm that the text message invitation was sent _**from**_, and at the personal initiation of, one of Plaintiff's friends or acquaintances with the email "djjg11@yahoo.com."  (Compl. ¶ 18 & Ex. A (emphasis added).)  This sort of personally-directed text messaging is entirely permissible under the TCPA.  It was a text message sent by someone who specifically identified Plaintiff as one of their personal contacts, provided Plaintiff's telephone number, and voluntarily chose to invite Plaintiff to join in playing fantasy sports at DraftKings.  That the sender chose to use the DraftKings in-phone "app" to text message Plaintiff does not transform the text message into a random, automatic, or robotic text within the scope of the TCPA.

Plaintiff's tack-on claim for common law "conversion" fails under the *de minimis* doctrine.  Courts have repeatedly rejected as *de minimis* similar conversion claims that have been appended to TCPA lawsuits.  Accordingly, Plaintiff's Corrected Class Action Complaint ("Complaint") should be dismissed.

## II.  STATEMENT OF FACTS

DraftKings provides an online platform for friends and family to play fantasy football and other fantasy sports with each other.  In fantasy football (as well as in other fantasy sports), a

---

[2]  On its face, the TCPA does not actually apply to text messages, but the FCC has ruled that the TCPA applies to text messages (47 C.F.R. § 64.1200(f)) and some courts have agreed. The Seventh Circuit has not yet addressed this issue, but for purposes of the instant Motion this Court can assume the TCPA applies to text messages.

player "drafts" players at various positions to field a team to play against other players' teams. As with many games, fantasy sports are not as fun in isolation. The excitement of the game is inherent in the competition and involvement of other people, namely the friends, family, or colleagues of the players. In order to foster the spirit of competition and continue to engage users in fantasy sports, friends and family can communicate with one another to extend an invitation to play.

As a convenience to its players, DraftKings' mobile phone application allows players to utilize the application to send text messages to invite their friends and family to play fantasy sports. The DraftKings player could obviously send the same text message through his or her own messaging application, but for the convenience of the player the application allows the player to send the text message invitation without leaving the DraftKings application. The text included in, and attached to, the Complaint (Compl. ¶ 18 & Ex. A) confirms that this is all that is alleged to have occurred. Plaintiff alleges that a DraftKings player with the email address djjg11@yahoo.com invited Plaintiff to join him in playing fantasy sports. The text message itself is merely a pre-drafted simple message conveying what the player is seeking to convey: "Come play DraftKings with me." (Compl. ¶ 18 & Ex. A.) No subsequent messages are sent. The invitation is completely voluntary. DraftKings does not require users to invite any other individuals, and the Complaint does not allege otherwise.

The *only* message allegedly at issue here was one sent by a single DraftKings player to one of his or her identified contacts (Plaintiff) because the DraftKings player wanted to extend an invitation to play fantasy football or other fantasy sports.

### III. LEGAL STANDARD

A complaint must be dismissed when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim under

Rule 12(b)(6), a court should engage in a two-step analysis. First, a court should disregard conclusory allegations and bare recitations of the elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Relatedly, where conclusory allegations are contradicted by documents attached to the complaint, which are judicially noticeable, the judicially noticeable materials control over the conclusory allegations. *In the Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment."); *see also N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998). Second, the court should determine whether the well-pleaded factual allegations state a claim that is "plausible," as opposed to merely "possible." *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

**A.    Plaintiff Fails to Adequately Allege a Violation of the TCPA**

**1.    The TCPA Applies Only to "Autodialers"**

The TCPA only prohibits unsolicited commercial calls made using an Autodialer. 42 U.S.C. § 227(b)(1)(A). However, Plaintiff's Complaint does not allege any facts that, even if assumed to be true, would establish that the one text message Plaintiff complains of was sent by an Autodialer.

The TCPA defines an Autodialer as equipment that can store or produce telephone numbers "using a random or sequential number generator." 42 U.S.C. § 227(a)(1). Notably, Plaintiff has not alleged any information about the "equipment" that was used to send the text

message to Plaintiff. Rather, he has merely copied the statutory definition of an Autodialer into his pleading. (Compl. ¶ 35 ("Draftkings sent the text messages . . . using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.").) This is a textbook example of the type of conclusory allegation that the Supreme Court denounced in *Twombly* and *Iqbal*. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("We understand the Court in *Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims."); *Abbas v. Selling Source, LLC*, No. 09 CV 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) (allegation that "parroted" the TCPA's requirement that the defendant used an auto-dialing system "is a bare legal conclusion entitled to no weight"); *Kramer v. Autobytel, Inc*., 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) ("As an isolated assertion, it is conclusory to allege that messages were sent using equipment" that satisfies the robo-call elements of the TCPA) (internal quotation marks omitted).

Not only is Plaintiff's threadbare recital of the statutory language insufficient to plead a TCPA violation, but the text message that Plaintiff attaches to his Complaint contradicts his conclusory allegation that the text message was sent automatically or at random. The text message shows on its face that it was sent by a particular DraftKings user ("***From*** djjg11@yahoo.com") to Plaintiff. (Compl. ¶ 18 & Ex. A (emphasis added).) The message reads "Come play DraftKings with ***me***," and asks the recipient to click on "***my*** link" in order to join. (*Id.* (emphases added).) Plaintiff cannot hope to create the appearance of automation and randomness by ignoring the facts that are apparent on the face of the text that is attached to the

Complaint showing that the message was sent from a human being who specifically invited Plaintiff to play fantasy sports with him.[3]

In short, the facts that are apparent from the text message attached to the Complaint trump any contradictory or unsupported allegations that Plaintiff may offer concerning the use of an Autodialer. *N. Indiana Gun & Outdoor Shows,* 163 F.3d at 454. Consequently, Plaintiff has failed to allege facts demonstrating than an Autodialer has been used, and, therefore, his TCPA claim must be dismissed. *See*, *e.g.*, *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (granting a motion to dismiss in a TCPA case because "Plaintiff provides only a threadbare, 'formulaic recitation of the elements' of a TCPA cause of action, which is not entitled to an assumption of truth . . . . [I]t is not sufficient to recite [an element of the TCPA] verbatim without other supporting details."); *Knutson v. Reply!, Inc.*, No. 10-CV-1267 BEN WMC, 2011 WL 291076, at *2 (S.D. Cal. Jan. 27, 2011) (dismissing TCPA claim where complaint contained only conclusory allegations that the Defendant used a robo-calling system).

**2.    The TCPA Only Applies to Messages Sent "Without Human Intervention"**

Plaintiff also vaguely alleges that the text message was sent using an automatic system that "lacks human intervention." (Compl. ¶ 36.) However, once again Plaintiff's Complaint falls under its own weight because it contains numerous and repeated allegations indicating that

---

[3] While not binding in any event, it should be noted that this case is distinguishable from *Sterk v. Path*, No. 13-2320, 2013 WL 5460813 (N.D. Ill. Sep. 26, 2013), in which the defendant's motion to dismiss a TCPA claim was denied based on an improper attempt by the defendant to contradict the plaintiff's allegations through a declaration. *Id*. at *5–6. Here, Plaintiff's allegations and the text attached to Plaintiff's Complaint demonstrate that the text at issue was sent by an acquaintance of Plaintiff, and not by a random Autodialer.

human intervention was the very reason for the message. The text attached to the Complaint makes it clear that human intervention was present at every step: a person has to voluntarily sign up to play DraftKings; that person must subsequently provide his or her own email address and create a username; then that person must affirmatively identify a contact they want to invite to play with them; the person must provide a phone number to reach the invitee by text; and then the person must affirmatively send the invitation to play by text using the DraftKings mobile application. Indeed, the person inviting the recipient of the message is identified in the text as the sender of the text message: the message here was "***from*** djjg11@yahoo.com," known by the Internet handle "GERONIMO11." (Compl. ¶ 18 & Ex. A.) That person then invited Plaintiff to "play DraftKings with ***me***" and to sign up using "***my*** link." (*Id.*)

In this case, it makes no difference that the sender of the text message elected to use the DraftKings application rather than some other method of delivery (email, imessage, SMS, or some other text-messaging application). In both cases, the message is sent only because a human has elected to send a message and has specifically identified who will receive it. The situation here is comparable to sharing a news article directly from a website by clicking a button on the website that says "share," and identifying a recipient. That the reader has not copied and pasted the entirety of the article into a separate email does not make the message any less from a human. Accordingly, contrary to Plaintiff's conclusory assertion, the text message attached to the Complaint clearly demonstrates that the text message was sent by a human, and specifically by one who had identified Plaintiff and voluntarily sent him a text message invitation to play fantasy sports. By definition, the text at issue was thus not sent robotically by an Autodialer. *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 727 (N.D. Ill. 2011) (reiterating that Autodialers "are governed by the TCPA because [. . .] they have the capacity to dial

numbers without human intervention.") (internal quotations omitted); *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1196 (W.D. Wash. 2014) ("Defendants' system, as presently configured, does not randomly or sequentially generate numbers and is not able to send a text message without human input. It is therefore incapable of performing as an [Autodialer].") The ***only*** reason that Plaintiff received a text message is because another person – and not even an agent of DraftKings – chose to send Plaintiff the text message inviting Plaintiff to play fantasy sports.

Plaintiff's allegations regarding the voice message recording only confirm the fallacy of Plaintiff's conclusory allegations. Plaintiff alleges that for some unknown reason he voluntarily called the phone number listed at the top of the text message and when he did so all he heard was a pre-recorded message directing him to refer to the text message he had already received from his friend. (Compl. ¶ 20.). No other message is alleged to be conveyed and no further contact of any kind is alleged. Thus, the only "unsolicited" contact Plaintiff alleges that he received was a single text message sent by a single DraftKings player who voluntarily chose to send that text message to Plaintiff to invite him to play fantasy sports. No "non-human" contact by DraftKings to Plaintiff is alleged to have taken place.

The limitation of the TCPA to situations that do not involve any human interaction is a meaningful and essential one that was established to further the goals of the TCPA. The TCPA was enacted primarily to protect consumers' privacy rights. *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, No. 13-14013, 2014 WL 5471916, at *3 (11th Cir. Oct. 30, 2014) ("It is clear from the legislative history of the statute that the TCPAs prohibition of unsolicited fax advertisements was intended to protect citizens from the loss of the use of their fax machine during the transmission of the fax data.") Specifically, this meant preventing unknown telemarketers from interrupting dinner at home and clogging up phone lines with automated messages about products that

consumers had no interest in. 137 Cong. Rec. S9840-02 (daily ed. July 11, 1991) (statement of

Sen. Hollings). Such abuses of personal privacy stand in stark contrast to the single text message

at issue here sent by one of Plaintiff's acquaintances.

The TCPA is simply inapplicable to the text message at issue here. *Mims v. Arrow Fin.*

*Servs., LLC*, 132 S. Ct. 740, 745 (2012) ("In enacting the TCPA, Congress made several findings

relevant here. 'Unrestricted telemarketing,' Congress determined, 'can be an intrusive invasion

of privacy.' In particular, Congress reported, 'many consumers are outraged over the

proliferation of intrusive, nuisance telemarketing calls to their homes'.") (internal quotations and

citations omitted).

**B.     Plaintiff's Conversion Claim Is Barred by the *de minimis* Doctrine**

Plaintiff's claim for conversion also fails because the alleged loss is *de minimis*. Plaintiff

alleges that DraftKings converted "data usage" and other components of Plaintiff's wireless

telephone when Plaintiff's acquaintance sent the text message via the DraftKings application.

(Compl. ¶ 40.) Even if it had occurred, such a "conversion" of data for a lone text message

would clearly be an insufficient taking to support a claim of conversion.

Courts have consistently rejected conversion claims brought in conjunction with similar

TCPA claims. *Garrett v. Rangle Dental Lab.*, No. 10-cv-1315, 2010 WL 3034709 (N.D. Ill.

Aug. 3, 2010) ("[Plaintiff's] conversion claim also fails because the alleged loss is *de minimis*

and can be remedied by his TCPA claim"); *G.M. Sign, Inc. v. Stergo*, 681 F. Supp. 2d 929, 935

(N.D. Ill. 2009) ("However the miniscule value of these chattels persuades me that this claim

cannot stand. The TCPA provides a cause of action for the grievance alleged in this conversion

claim, and Plaintiff has invoked this federal statute accordingly in its first claim."); *Rossario's*

*Fine Jewelry, Inc. v. Paddock Publications, Inc.*, 443 F. Supp. 2d 976, 979-80 (N.D. Ill. 2006)

(admonishing practice of pleading theories for the same cause of action under different counts, dismissing conversion claim as "surplusage" in light of TCPA claim; noting that the *de minimis* doctrine "might well have been coined for this occasion").

Here, the Complaint only vaguely refers to alleged conversion of wireless phone "components" and "data usage." (Compl. ¶ 40.) It is not clear what conversion of "components" occurred because a text does not prevent a person from using his or her phone, and, as noted, Plaintiff has failed to allege any specifics regarding any purported incremental charges for this single text. However, even if there were such a charge, courts have rejected similar claims, including those involving unwanted fax messages where there was a usage of ink, paper, and toner along with causing the machine to physically print out the fax advertisement. There is no reason to treat this single text message any differently.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed, with prejudice.

DATED: November 7, 2014

Respectfully submitted,

DRAFTKINGS, INC.

By: /s/ Michael K. Forde
     One of its attorneys

James P. Fogelman*
Austin Schwing*
Timothy W. Loose*
Dione Garlick*
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7205
JFogelman@gibsondunn.com
ASchwing@gibsondunn.com
TLoose@gibsondunn.com
DGarlick@gibsondunn.com

10

Michael K. Forde
Ellen M. Carey
Forde Law Offices LLP
111 West Washington Street, Suite 1100
Chicago, IL 60602
(312) 641-1441
mforde@fordellp.com
ecarey@fordellp.com

*PRO HAC VICE APPLICATIONS PENDING

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF IZSAK'S CORRECTED CLASS ACTION COMPLAINT was served, via the Court's CM/ECF System on the 7th day of November, 2014.

/s/Michael K. Forde____