**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID IZSAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14-cv-07952 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| DRAFTKINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff David Izsak brings this putative class action against Defendant DraftKings, Inc.

("DraftKings"), alleging that DraftKings sent him an unsolicited text message in violation of the

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* Izsak also asserts a claim

for common law conversion. Before the Court is DraftKings's motion to dismiss Izsak's corrected

class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 15.) For

the reasons stated below, the motion is granted in part and denied in part.

**BACKGROUND**

As set forth in the complaint,[1] DraftKings provides an online platform for individuals to

compete for cash prizes in fantasy sports contests. (Compl. ¶ 1, Dkt. No. 6.) These contests take

place over the internet and participants pay an entry fee. (*Id.*) To market its products and services,

DraftKings uses "Short Message Service" or "SMS" to transmit short text messages (usually no

more than 160 characters) to wireless telephones. (*Id.* ¶ 11.) Text messages may cost the recipient

---

[1] For purposes of deciding the instant motion, the Court accepts the allegations in the complaint as true and draws all permissible inferences in Izsak's favor. *See, e.g.*, *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

either in the form of a monetary charge for each text message received or a deduction from the recipient's text messaging plan. (*Id*. ¶ 14.)

On September 1, 2014, DraftKings sent an unsolicited text message to Izsak's wireless telephone. (*Id. ¶¶* 17-18.)[2] The text message reads as follows:

> from djjg11@yahoo.com:
> Come play DraftKings with
> me. Use my link and we'll
> both get a bonus http://
> www.draftkings.com/r/
> GERONIMO11

(Compl. Ex. A, Dkt. No. 6-1.) The website referenced in the text message is registered by DraftKings. (Compl. ¶ 21, Dkt. No. 6.) The text message "from" field identifies the sender as "617-849-9834." (*Id*. ¶ 19.) When that number is called, the following message plays: "Hi, this automated message [is] from DraftKings. Please refer to the original message you received from this number." (*Id*. ¶ 20.) Izsak alleges that DraftKings sent the same, or substantially the same, text message *en masse* to thousands of wireless telephone numbers using "equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers." (*Id*. ¶¶ 22-23.) He further claims that the equipment sent the text messages simultaneously and without human intervention. (*Id*. ¶ 36.) According to Izsak, receipt of the text message utilized his wireless data, which made the data otherwise unusable and decreased the performance of his cellular phone. (*Id*. ¶ 43.) Izsak represents that, as a result, his device could no longer be used for any other purpose. (*Id*. ¶ 45.)

Izsak has filed a two-count complaint based on DraftKings's transmission of the unsolicited text message. First, he claims that DraftKings violated the provision of the TCPA that

---

[2] Izsak notes that he never consented to, requested, or otherwise desired or permitted DraftKings to send text messages to his wireless phone. (Compl. ¶ 24, Dkt. No. 6.)

prohibits making any call[3] to a cellular telephone number (other than a call made for emergency purposes or with the prior express consent of the called party) using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Second, Izsak asserts that by sending unauthorized text messages to him and others, DraftKings converted to its own use their wireless data—an asset of economic value for which they paid. On behalf of himself and a putative class of similarly-situated individuals, Izsak seeks an injunction requiring DraftKings to cease all unsolicited text message activity, as well as an award of actual and statutory damages.

## DISCUSSION

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Id*. at 555. The plaintiff must "'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement

---

[3] DraftKings has not disputed that a text message qualifies as a call. Therefore, at this stage in the proceedings, the Court need not reach that issue. The Court notes, however, that other courts have agreed with the Federal Communications Commission's interpretation that § 227 applies to text messages. *See, e.g.*, *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009 (N.D. Ill. 2010) ("the Court agrees with the FCC's interpretation that § 227 of the TCPA applies to text messages"); *Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1000 (N.D. Ill. 2014) ("A text message is a 'call' within the meaning of the TCPA.") (internal citations omitted).

to relief." *Id.* (internal quotation marks and citation omitted). In addition, "although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *Id.* (internal citation omitted). Finally, this Court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *In the Matter of Wade*, 969 F.2d 241, 250 (7th Cir. 1992) (internal quotation marks and citation omitted).

### I.   Count I – Violation of the Telephone Consumer Protection Act

To plead a violation of the TCPA adequately, Izsak must allege that DraftKings utilized an ATDS to send the September 1, 2014 text message. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The Federal Communications Commission ("FCC") has instructed that "the capacity to dial numbers without human intervention is the basic function of an [ATDS.]" *Sterk v. Path, Inc.*, No. 13 CV 2330, 2014 WL 8813657, at *2 (N.D. Ill. Aug. 8, 2014) (citing *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd. 559, 566 (2008)). *See also Modica v. Green Tree Servicing, LLC.*, No. 14 C 3308, 2015 WL 1943222, at *2 (N.D. Ill. Apr. 29, 2015) (noting that the FCC has "recognized the capacity to dial numbers without human intervention as an essential requirement for an ATDS.") (internal citations omitted).

As other courts have recognized, the case law in this District is mixed as to the requirements for pleading a TCPA claim, particularly with respect to use of an ATDS. *See, e.g., Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *2-3 (N.D. Ill. Dec. 18, 2012);

*Schlotfeldt v. Wells Fargo Home Mortgage, Inc.*, No. 15 C 6656, 2016 WL 406341, at *5 (N.D. Ill. Feb. 3, 2016). Some cases have held, or at least suggested, that merely reciting the statutory definition of an ATDS is sufficient. *See, e.g., Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010-11 (N.D. Ill. 2010); *Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012). Others have stated that more is required—that a plaintiff must allege additional facts giving rise to the reasonable inference that an ATDS was used. *See, e.g., Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, No. 15 C 5412, 2015 WL 8780579, at *4 (N.D. Ill. Dec. 15, 2015); *Martin v. Direct Wines, Inc.*, No. 15 C 757, 2015 WL 4148704, at *2 (N.D. Ill. July 9, 2015); *Abbas v. Selling Source, LLC*, No. 09 CV 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009).

This Court agrees with the view that where a fact—here, use of an ATDS—is itself an element of the claim, "it is not sufficient to recite that fact verbatim without other supporting details." *Ananthapadmanabhan*, 2015 WL 8780579, at *4. Rather, a plaintiff must plead additional, independent facts that "suggest beyond the speculative level that Defendant actually used an ATDS and is liable under the TCPA." *Oliver v. DirecTV, LLC*, No. 14-cv-7794, 2015 WL 1727251, at *3 (N.D. Ill. Apr. 13, 2015) (internal quotation marks and citations omitted). While a TCPA plaintiff should not be expected to plead details regarding the technical functionality of the alleged ATDS, the complaint must include at least some facts to support the conclusion that an ATDS was used. For example, a plaintiff could describe the promotional content or the generic, impersonal nature of the text message allegedly sent using an ATDS. A plaintiff might also allege that identical messages were sent to many potential customers at the same time. *See, e.g., Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014); *Strickler v. Bijora, Inc.,* No. 11 CV 3468, 2012 WL 5386089, at *2 (N.D. Ill. Oct. 30, 2012); *Abbas*, 2009 WL 4884471, at *3.

Here, Izsak parrots the language of the TCPA, alleging that DraftKings sent the text messages at issue using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. But he then goes on to provide a screenshot of the text message he received and also to allege that DraftKings sent the same, or substantially the same, message to thousands of wireless telephone numbers. In addition, Izsak further alleges that, upon calling the number from which he received the text message, he heard the following prerecorded message: "Hi, this automated message [is] from DraftKings. Please refer to the original message you received from this number." Do these additional factual allegations plausibly suggest that DraftKings used an ATDS to send the September 1, 2014 text message? The Court concludes that they do.

DraftKings argues that, far from supporting the assertion that an ATDS was used, the allegations in Izsak's complaint actually contradict that assertion. Specifically, DraftKings contends that the text message shows on its face that one of Izsak's friends or acquaintances with the email address "djjg11@yahoo.com" sent the message using DraftKings's in-phone application, inviting Izsak to play fantasy sports. While that may prove to be the case, "simply presenting an alternative explanation for the facts alleged in the complaint is insufficient to demonstrate that the complaint fails to plausibly suggest a right to relief." *Astor Prof'l Search, LLC v. MegaPath Corp.*, No.1:12-cv-02313, 2013 WL 1283810, at *5 (N.D. Ill. Mar. 27, 2013). *See also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("'Plausibility' in [the context of *Twombly* and *Iqbal*] does not imply that the district court should decide whose version to believe, or which version is more likely than not . . . it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences."). And while certain of the allegations highlighted by

DraftKings potentially undercut Izsak's claim that an ATDS was used, the complaint includes other allegations that cut the other way. Further, the screenshot displaying the September 1, 2014 text message, attached as an exhibit to the complaint, does not "*incontrovertibly* contradict[] the allegations in the complaint." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (internal citation omitted) (emphasis added).

While Izsak received only one text message, *cf. Smith v. Royal Bahamas Cruise Line*, No. 14-cv-03462, 2016 WL 232425 (N.D. Ill. Jan. 20, 2016) (several automated calls) and *Sojka*, 35 F. Supp. 3d 996 (multiple identical text messages), his allegation that the same message was sent *en masse* to thousands of wireless telephone numbers, which must be taken as true, points toward use of an ATDS. *See Abbas*, 2009 WL 4884471, at *3 (plaintiff's allegation that defendant sent mass transmissions of wireless spam to potential customers, together with other allegations, allowed the court to reasonably infer that an ATDS was used); *Sojka*, 35 F. Supp. 3d at 1003 (the allegation that members of the putative class received the same messages, coupled with other allegations, led to the reasonable inference that the messages were sent using an ATDS). And although DraftKings takes the position that the contents of the September 1, 2014 text message demonstrate that it was personally sent by an individual, a plausible alternative view is that the generic nature of the message indicates it was actually sent from an institutional sender for marketing purposes and only crafted to appear personalized. *See Abbas*, 2009 WL 4884471, at *3.

Also supporting the inference that an ATDS was used is Izsak's allegation that, upon calling the number from which he received the text message, he heard an automated message from DraftKings. *See, e.g., Smith*, 2016 WL 232425, at *4; *Vance v. Bureau of Collection Recovery LLC*, No. 10-cv-06324, 2011 WL 881550, at *3 (N.D. Ill. Mar. 11, 2011) ("even if Plaintiff were required to state the grounds for her suspicions, Plaintiff does just that—she alleges

that she suspected that the phone calls that she received were automated because she heard a prerecorded voice when she answered.") (internal quotation marks and citation omitted). *Cf. Johansen*, 2012 WL 6590551, at *3 (dismissing a TCPA claim where the plaintiff stated only that the defendant left prerecorded messages on his cell phone using an ATDS without providing any additional information about the messages received). Of course, the alleged TCPA violation here is the text message Izsak received, not the call during which he heard the prerecorded message. But the circumstances suggest that the equipment used to send the text message and the equipment that "answered" the call are one in the same, or are at least connected. This, in turn, suggests that such equipment had the capacity to store or produce and dial telephone numbers randomly or sequentially. How the equipment worked in practice and whether human intervention was required to send the September 1, 2014 text message are factual matters to be explored during discovery.

On the matter of human intervention, DraftKings argues that the text message itself, consisting of what it characterizes as a personalized message, illustrates that it required direct human involvement—presumably by the user of the email address "djjll@yahoo.com" and the internet handle "GERONIMO11." As DraftKings argues:

> [A] person has to voluntarily sign up to play DraftKings; that person must subsequently provide his or her own email address and create a username; then that person must affirmatively identify a contact they want to invite to play with them; the person must provide a phone number to reach the invitee by text; and then the person must affirmatively send the invitation to play by text using the DraftKings mobile application.

(Def. Memo in Support of Mot. to Dismiss at 7, Dkt. No. 17.) In other words, "human intervention was present at every step." (*Id.*) Thus, according to DraftKings, the contents of the text message contradict Izsak's conclusory allegation that it was sent without any human intervention, which refutes his assertion that an ATDS was used and defeats his TCPA claim. But,

as stated above, simply presenting the Court with an alternative version of events does not establish that Izsak has failed to state a claim. Just as Izsak's allegations plausibly suggest that an ATDS was used, those same allegations—coupled with his assertion that DraftKings transmitted the message without human intervention—are sufficient to allow the Court to infer reasonably there was no human involvement. Just as discovery should reveal how DraftKings's equipment functions in practice, so too should discovery illuminate whether individual action prompted the text message at issue.

DraftKings is correct that a number of district courts (although none in this Circuit) have held that a text message sent with human intervention disqualifies the equipment used as being an ATDS. But none of those cases controls here and each is easily distinguishable. Most were decided at the summary judgment stage, presumably after fact discovery into the nature and functionality of the equipment used by each of the defendants to send the text message or messages at issue. *See Gragg v. Orange Cab Co., Inc.*, 995 F. Supp. 2d 1189, 1194 (W.D. Wash. 2014) (explaining that the defendant cab company's computer program was able to send dispatch notifications only after the cab driver had physically pressed "accept"); *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1289 (S.D. Cal. 2014) (detailing the methods by which phone numbers were inputted into the third-party web-based platform used by the defendant to send promotional text messages); *Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015) (finding that the text messages at issue were sent to the plaintiff in response to an individual's creation of a group using the defendant's group messaging application). In the only case decided at the motion to dismiss stage, the plaintiff's own allegations made clear that the defendant's messaging application could send text messages only at the affirmative direction of a user of the application and only to recipients selected by the user.

*See McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 WL 428728, at *3 (N.D. Cal. Jan. 30, 2015). Here, in contrast, the contents of the text message that Izsak received are not the equivalent of affirmative allegations of human intervention. And unlike the plaintiff in *McKenna*, Izsak does not concede the point. *See id.* (noting that the plaintiff's opposition conceded that the application sent text messages only at the user's affirmative direction).

In sum, while certain of Izsak's allegations might be viewed as undermining his assertion that an ATDS was used to send the September 1, 2014 text message without any human intervention, the additional allegations in the complaint, taken together, are sufficient to allow the Court to reasonably infer that DraftKings sent Izsak a text message using equipment with some automated capacity. DraftKings should know if it sent marketing text messages utilizing an ATDS on the day in question. If it did not, it can simply deny the allegations; if there are questions as to whether it sent such text messages to Izsak and the other purported class members, those can be addressed through discovery. But for now, Izsak has provided enough factual support for the conclusion that an ATDS was used, and his allegations are therefore sufficient to state a claim under the TCPA.

### Count II – Conversion

To establish a conversion claim under Illinois law, Izsak must show: "(1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Van Diest Supply Co. v. Shelby Cty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998)). As stated above, Izsak seeks an award of damages for conversion based on the theory that, by sending text messages to his and the other purported class members' wireless phones,

10

DraftKings converted to its own use data under their wireless plans and "components of [their] wireless telephones." (Compl. ¶ 40, Dkt. No 6.) Izsak claims that he and the other class members owned and had an unqualified right to the immediate possession of their phones and data and that DraftKings's appropriation, which rendered the phones and data unusable or decreased their performance, was wrongful and without authorization.

In support of its motion to dismiss, DraftKings argues that the *de minimis* doctrine bars Izsak's conversion claim because he has not and cannot plead any facts to establish that his receipt of a single text message caused anything more than *de minimis* damages. The doctrine of *de minimis non curat lex*, or "the law does not concern itself with trifles," prevents collecting on claims where "the damages are just too small to warrant treatment in the judicial system." *Quality Mgmt. & Consulting Servs., Inc. v. SAR Orland Food Inc.*, No. 11 CV 06791, 2012 WL 2128327, at *1-2 (N.D. Ill. June 11, 2012).[4] Izsak responds that the law in this area is unclear and argues that the *de minimis* doctrine should not bar his claim.

Indeed, there appears to be no controlling Seventh Circuit precedent on this issue, and courts in this District have disagreed regarding whether the damages arising from a limited number of unsolicited communications require application of the *de minimis* doctrine. *Id*. at *2. One line of cases relies on the *de minimis* doctrine to reject conversion claims brought in conjunction with TCPA claims. *See, e.g., id*. at *3 (dismissing plaintiff's conversion claim because the "receipt of three unwanted faxes caused only *de minimis* damages"); *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 613 (N.D. Ill. 2009) (declining to "entertain plaintiff's trivial claim of conversion" because the damages resulting from the receipt of a one-page fax advertisement were "miniscule to the point of nonexistent," rendering the *de*

---

[4] *De minimis non curat lex* is a state and federal common law doctrine. *Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 844 (7th Cir. 2014).

*minimis* doctrine applicable) (internal quotation marks and citations omitted); *Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns, Inc.*, 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006) ("the ancient maxim '*de minimis non curat lex*' might well have been coined for this occasion"—where the allegedly converted property was the ink or toner and paper consumed in generating a one-page fax).[5] A number of courts have emphasized the redundancy of asserting a conversion claim along with a TCPA claim. *See Garrett v. Rangle Dental Lab.*, No. 10 C 1315, 2010 WL 3034709, at *1 (N.D. Ill. Aug. 3, 2010) (holding that plaintiff's conversion claim failed because the alleged loss was *de minimis* and could be remedied by his TCPA claim); *G.M. Sign, Inc. v. Stergo*, 681 F. Supp. 2d 929, 934-35 (N.D. Ill. 2009) (holding that plaintiff's conversion claim was barred by the *de minimis* doctrine and noting that the TCPA provided a cause of action for the grievance alleged in that claim, which statute plaintiff had invoked accordingly in its first claim).

This Court is persuaded by the reasoning of those cases that reject conversion claims such as the one asserted by Izsak. In fact, application of the *de minimis* doctrine may be even more appropriate here, where the loss is similarly trivial but not nearly as concrete as the lost ink, toner, or paper at issue in the TCPA fax cases. The cost imposed, or the data lost, by the receipt of the

---

[5] In other cases, courts have declined to apply the *de minimis* doctrine to bar similar conversion claims. *See, e.g.*, *Centerline Equip. Corp. v. Banner Personnel Serv., Inc.*, 545 F. Supp. 2d 768, 782 (N.D. Ill. 2008) ("The court . . . declines to assume, at the pleading stage, that the alleged deprivation is *de minimis*. An individual claim for the loss of one sheet of paper might well be niggling, but a class claim could be more substantial, and class treatment is regularly afforded in cases where no individual plaintiff has suffered any great loss. Furthermore, the maxim may not apply at all, as Illinois courts have permitted conversion claims to be brought for only nominal damages. If Illinois courts recognize conversion claims where there are no damages at all, they might well also recognize actions for very small damages.") (internal quotation marks and citations omitted); *R. Rudnick & Co. v. G.F. Protection, Inc.*, No. 08 C 1856, 2009 WL 112380, at *4 (N.D. Ill. Jan. 15, 2009) (since Illinois courts permit nominal damages in conversion actions, the *de minimis* theory has no applicability); *Brodsky v. HumanaDental Ins. Co.*, No. 10-C-3233, 2011 WL 529302, at *7 (N.D. Ill. Feb. 8, 2011) (on a motion to dismiss, a presumption that the injury is so minor that the *de minimis* doctrine applies would be inconsistent with the court's duty to draw reasonable inferences of fact in the plaintiff's favor) (quoting *Centerline*, 545 F. Supp. 2d at 779).

alleged single unwanted text message—if there is any actual financial loss at all—is no doubt miniscule.[6] And any trivial inconvenience or expense can be remedied by Izsak's TCPA claim.

Further, for the reasons aptly explained in a number of the cases cited above, the Court disagrees with the approach taken in the cases that have rejected application of the *de minimis* doctrine to bar similar conversion claims. First, some of those cases "aggregate the potential damages by considering class-wide damages," which "puts the cart before the horse." *Quality Mgmt.*, 2012 WL 2128327, at *2 (internal citations omitted). Courts cannot consider the aggregate value of a putative class conversion claim unless the plaintiff presents a valid cause of action in his own right. In other words, "[c]umulative allegations of a putative class in a complaint cannot be used to prop up an otherwise trivial claim that is unable to stand on its own." *Stonecrafters*, 633 F. Supp. 2d at 614. *See also G.M. Sign*, 681 F. Supp. 2d at 933 ("Plaintiff's conversion claim must be sufficient to stand alone, and the estimated damages for potential class members cannot be aggregated to assist Plaintiff in sufficiently pleading its claim.")

Second, while some cases have pointed to the availability of nominal damages for conversion claims, nominal damages and *de minimis* damages are two distinct concepts. *Stonecrafters*, 633 F. Supp. 2d at 614; *Quality Mgmt.*, 2012 WL 2128327, at *3. Nominal damages may be appropriate "when there is a violation of sufficient gravity, but significant damages cannot be proved with sufficient specificity." *Quality Mgmt.*, 2012 WL 2128327, at *3 (internal citation omitted). In contrast, the *de minimis* doctrine applies to "claims in which the

---

[6] The Court does not mean to suggest that the *de minimis* doctrine bars all conversion claims based on the receipt of unsolicited text messages. With different allegations, a plaintiff might be able to state such a claim. For example, if a plaintiff's receipt of unwanted text messages caused him to exceed the limits of his cellular data plan, requiring him to pay a penalty, the loss may not be *de minimis*. Similarly, if a plaintiff received multiple unsolicited text messages while traveling internationally, she might have to pay a high fee per text message—or data roaming charges—that could be considered nontrivial. There are no such allegations here. Recognizing the possibility that Izsak might be able to state claim, however, the dismissal of Count II will be without prejudice.

plaintiff has suffered no more than negligible damages from the beginning." *Stonecrafters*, 633 F. Supp. 2d at 615. Thus, where there is no particular difficulty quantifying the damages in an unsolicited communication case, a court should not consider nominal damages. *See Quality Mgmt.*, 2012 WL 2128327, at *3. Here, it is possible to quantify the cost of, or the amount of data used for, a single text message, such that nominal damages are not appropriate. In other words, "[w]hat applies here are *de minimis* damages, not nominal damages." *Id.* As such, Izsak's conversion claim is barred by the *de minimis* doctrine and Count II is dismissed. *See id. See also Stonecrafters*, 633 F. Supp. 2d at 615 ("Because plaintiff's claim for conversion of paper and toner was insufficient at its inception to merit a judgment, the *de minimis* doctrine applies in this case, and no amount of damages, nominal or otherwise, would be appropriate.").

## CONCLUSION

For the reasons stated above, DraftKings's motion to dismiss (Dkt. No. 15) is GRANTED IN PART and DENIED IN PART. Izsak has adequately pleaded a TCPA claim and Count I of the complaint therefore survives. Because Izsak's claim for conversion is barred by the *de minimis* doctrine, Count II is dismissed without prejudice.

ENTERED:

Dated: June 13, 2016

_____
Andrea R. Wood
United States District Judge